## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SMART PROFITABILITY
SOLUTIONS, LLC d/b/a SMART
SAFETY GULF COAST,

        Plaintiff,

v.

DOUBLE CHECK RISK SOLUTIONS,
LLC AND JOHN MARSHA, II,

        Defendants.

Civil Action
File No. 1:18-cv-00706-MHC

## DOUBLE CHECK RISK SOLUTIONS, LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Defendant Double Check Risk Solutions, LLC ("Double Check"), by and

through its undersigned counsel, hereby answers and otherwise responds to

Plaintiff's First Amended Verified Complaint for Damages and Injunctive Relief,

subject to the defenses set forth herein.

## PARTIES

### COMPLAINT ¶1:

SMART is a corporation organized under the laws of the State of Delaware,
with its principal place of business in Marietta, Georgia.

**ANSWER:**

Double Check lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 1, and therefore denies them.

**COMPLAINT ¶2:**

Defendant Double Check is a Georgia limited liability company, with its principal place of business located in Atlanta, Georgia. Double Check may be served with process through its registered agent, Ben Newton, at 2800 Century Parkway, Suite 300, Atlanta, Georgia 30345.

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 2.

**COMPLAINT ¶3:**

Defendant John Marsha, II is an individual who resides in Paulding County, Georgia. He may be served with a copy of this Complaint at his home address, 119 Foxdale Way, Dallas, Georgia 30132.

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 3.

## JURISDICTION AND VENUE

**COMPLAINT ¶4:**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves federal questions arising under the Computer Fraud and Abuse Act of 1986, as amended, 18 U.S.C. § 1030 ("CFAA"). This Court also has supplemental jurisdiction over all of the state law claims in this action because they arise out of the same facts and circumstances underlying the CFAA claim.

45200232v.1

**ANSWER:**

Double Check denies violating the CFAA.  The remaining allegations set forth in Paragraph 4 are legal conclusions, to which no response is required.  To the extent that a response is required, Double Check denies the allegations.

**COMPLAINT ¶5:**

This Court has personal jurisdiction over Double Check because the claims alleged against it arise from its transaction of business in the State of Georgia, and/or from Double Check's commission of tortious acts in the State of Georgia.

**ANSWER:**

Double Check denies committing tortious acts.  The remaining allegations set forth in Paragraph 5 are legal conclusions, to which no response is required.  To the extent that a response is required, Double Check denies the allegations.

**COMPLAINT ¶6:**

This Court has personal jurisdiction over Defendant Marsha because, as a Georgia resident, he is subject to general personal jurisdiction in Georgia.

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 6.

**COMPLAINT ¶7:**

This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District and Division.

45200232v.1

**ANSWER:**

The allegations set forth in Paragraph 7 are legal conclusions, to which no response is required. To the extent that a response is required, Double Check denies the allegations.

## FACTS

**COMPLAINT ¶8:**

SMART provides safety management, OSHA training, and professional safety staffing solutions to companies in a variety of industries throughout the United States.  SMART primarily provides such services to companies in the construction industry, but also serves those in distribution, manufacturing, and similar industries.  Robert L. Turner, III ("Turner") is the Company's President and Chief Executive Officer.

**ANSWER:**

Double Check admits that SMART provided safety management, OSHA training, and professional safety staffing solutions to companies in a variety of industries throughout the United States.   Double Check lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 8, and therefore denies them.

**COMPLAINT ¶9:**

Marsha began his relationship with SMART as an independent contractor on or about May 30, 2014.

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 9.

## COMPLAINT ¶10:

In conjunction with the commencement of his engagement with SMART, Marsha executed a Confidentiality, Non-Solicitation, and Non-Competition Agreement (the "Non-Disclosure/Non-Solicitation Agreement").  A true and correct copy of the Non-Disclosure/Non-Solicitation Agreement is attached as **Exhibit A**.

## ANSWER:

Double Check admits to the allegations set forth in Paragraph 10.

## COMPLAINT ¶11:

The Non-Disclosure/Non-Solicitation Agreement contains a confidentiality provision, which provides:

> Confidential Information.  I recognize that during my employment I will receive, develop, or otherwise acquire information which is of a secret or confidential nature, including Confidential Information regarding Smart and its Clients.  Except as authorized by Smart, I will not disclose, directly or indirectly, any Confidential Information of Smart or its Clients to any third party including, without limitation, other customers or suppliers.  Further, I will only use such Confidential Information in the faithful performance of my duties for Smart.  The confidentiality provisions of this Agreement shall survive the termination of my employment at Smart.  I also acknowledge that all files, records, documents, drawings, specifications, equipment, and similar items (regardless of media) relating to Smart's business, whether prepared by me or otherwise coming into my possession, shall remain the exclusive property of Smart.  Upon the conclusion of my employment, I agree to return to or leave with Smart all of such written or other records and all copies thereof.

(Exhibit A, ¶ A).

## ANSWER:

Double Check admits to the allegations set forth in Paragraph 11.

45200232v.1

**COMPLAINT ¶12:**

"Confidential Information" is defined as:

any and all trade secrets and other confidential information relating to the disclosing party's business or the business of its customers, suppliers, equipment manufacturers and/or consultants with whom it conducts business ("Clients") including, but not limited to information concerning management, engineering, finances, human resources, information services, legal, manufacturing, marketing, project management, research and development, business forms, sales, products and product plans; computer software; processes; procedures; pricing; business costs; business plans; ideas, drawings and technical data; financial data and plans; identity of actual and potential customers; identity, capability, responsibilities, and/or compensation of its employees; recruiting plans; customer specifications and job requirements; and proposals and bidding information.
(Exhibit A, ¶ 2).

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 12.

**COMPLAINT ¶13:**

The Non-Disclosure/Non-Solicitation Agreement also contains a non-solicitation of employees provision, which provides: "I agree that, during the Prohibited Term, I will not directly or indirectly, solicit, recruit or induce any Smart employee to leave employment with Smart or to work for any other person or business." (Exhibit A, ¶ C).

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 13.

**COMPLAINT ¶14:**

"Prohibited Term" is defined as "during employment, and the two year period immediately following the termination of my employment with Smart (regardless of the reason for such termination."). (Exhibit A, ¶ 3).

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 14.

**COMPLAINT ¶15:**

On or about September 4, 2014, SMART hired Marsha as its Business Development Officer. Upon accepting SMART's offer of employment, Marsha signed an offer letter acknowledging and agreeing to the terms of his employment (the "Employment Agreement"). A true and correct copy of the Employment Agreement is attached as **Exhibit B**.

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 15.

**COMPLAINT ¶16:**

The Employment Agreement specifically incorporates Marsha's Non-Disclosure/Non-Solicitation Agreement as a condition of Marsha's employment. (Exhibit B, p. 5). Accordingly, by signing the Employment Agreement, Marsha re-affirmed his contractual obligations outlined in the Non-Disclosure/Non-Solicitation Agreement, including those outlined above.

**ANSWER:**

The Employment Agreement is a written document that speaks for itself and

the remaining allegations set forth in Paragraph 16 are legal conclusions, to which

no response is required. To the extent that a response is required, Double Check

denies the allegations.

45200232v.1

**COMPLAINT ¶17:**

As SMART's Business Development Officer, Marsha reported directly to CEO Turner, and was one of the top four executives in SMART's organization. During his employment, Marsha was one of only four employees who received grants of equity awards from the Company.

**ANSWER:**

Double Check admits that as SMART's Business Development Officer, Marsha reported directly to CEO Turner as he was one of the top four executives in SMART's organization.  Double Check lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 17, and therefore denies them.

**COMPLAINT ¶18:**

In this role, Marsha was responsible for directing SMART's sales efforts across all regions, services, and industry segments serviced by SMART; overseeing SMART's marketing functions; and managing the activities of SMART employees engaged in sales activities and SMART's field safety personnel.

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 18.

**COMPLAINT ¶19:**

Marsha had the authority to submit proposals to SMART's customers and potential customers, to negotiate pricing, and to modify service terms as necessary to secure sales.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 19.

45200232v.1

## COMPLAINT ¶20:

Marsha was also entrusted with cultivating SMART's most valuable business relationships, including those with SMART referral sources/channel partners (insurance brokers, law firms, etc.) and SMART customers and potential customers.

## ANSWER:

Double Check admits that Marsha was responsible for making sales and cultivating business relationships on behalf of SMART with customers and potential customers. Double Check lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 20, and therefore denies them.

## COMPLAINT ¶21:

Marsha was likewise entrusted with SMART's most valuable proprietary information, including but not limited to its strategic planning data, actual and prospective customer data, sales proposals and contracts, confidential marketing and business development materials, and proprietary pricing and sales methodologies.

## ANSWER:

Double Check admits Marsha was provided with numerous materials belonging to SMART, but not all information belonging to SMART. Double Check lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 21, and therefore denies them.

## COMPLAINT ¶22:

In or around July 2017, while still employed as SMART's Business Development Officer, Marsha approached Brandon Chapman, Vice President of

45200232v.1

the Gulf Coast Region of SMART, and asked him if he would be interested in
starting a competing safety services company with him. During this conversation,
Marsha encouraged Chapman to leave SMART and join him in a competitive
venture.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 22.

**COMPLAINT ¶23:**

Similarly, in or around September/October 2017, while still employed as
SMART's Business Development Officer, Marsha asked Ted Low, Vice President
of National Operations, to leave SMART and start a competing safety services
company with him. Marsha also informed Low that he had already approached
Chapman about the idea, and Marsha encouraged Low to join him. Marsha further
told Low that although he knew he had agreed to certain restrictive covenants in
the Non-Disclosure/Non-Solicitation Agreement, he did not think it would be an
issue because SMART did not have the stomach to try to enforce it against him.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 23.

**COMPLAINT ¶24:**

On or about November 16, 2017, Defendant Double Check filed its Articles
of Organization with the Georgia Secretary of State. Upon information and belief,
Defendant Marsha, as the President of Double Check, authorized Double Check's
creation.

**ANSWER:**

Double Check admits that on or about November 16, 2017, it filed its

Articles of Organization. Double Check denies the remaining allegations set forth

in Paragraph 24.

**COMPLAINT ¶25:**

On or about December 18, 2017, Marsha voluntarily and unexpectedly resigned from SMART, with his last official day of employment being January 2, 2018.

**ANSWER:**

Double Check admits that, on December 18, 2017, Marsha voluntarily

resigned from SMART and his last official day of employment was January 2,

2018. Double Check lacks knowledge or information sufficient to form a belief as

to the remaining allegations set forth in Paragraph 25, and therefore denies them.

**COMPLAINT ¶26:**

During Marsha's exit interview with Turner, Marsha told Turner that he was leaving SMART to become President of an entity which resold auto insurance warranties. Marsha explicitly represented to Turner that this company was not a competitor of SMART.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 26.

**COMPLAINT ¶27:**

Marsha turned in his company-issued computer to SMART on or about December 21, 2017.

**ANSWER:**

Double Check lacks knowledge or information sufficient to form a belief as

to the allegations set forth in Paragraph 27, and therefore denies them.

45200232v.1

**COMPLAINT ¶28:**

Following Marsha's voluntary resignation, Marsha updated his LinkedIn profile to include his new role as President of Double Check.  A true and correct copy of Marsha's LinkedIn profile is attached as **Exhibit C**.  Double Check's LinkedIn profile describes the company as one that "manages customized programs for auto dealers, manufacturers, and distribution companies."  It further lists Double Check's specialties as including "safety" and "OSHA."  A true and correct copy of Double Check's LinkedIn profile is attached as **Exhibit D**.

**ANSWER:**

Double Check admits to the allegation set forth in Paragraph 28.

**COMPLAINT ¶29:**

Based on its own publicized statements, Double Check is providing services competitive with SMART.

**ANSWER:**

Double Check admits that it provides some services that are competitive

with SMART.

**COMPLAINT ¶30:**

In light of this discovery, SMART began investing Marsha's departure from the Company, including undertaking a third-party forensic examination of Marsha's SMART computer.

**ANSWER:**

Double Check lacks knowledge or information sufficient to form a belief as

to the allegations set forth in Paragraph 30, and therefore denies them.

45200232v.1

**COMPLAINT ¶31:**

This examination revealed that in the week before Marsha's return of his SMART computer, Marsha connected an external storage device(s) to the computer.  He then accessed numerous files on that device, revealing that Marsha had either just downloaded the files to the device or had done so previously.  These files contained significant amounts of SMART's confidential information and trade secrets, to which Marsha had been provided access over the last three years solely by virtue of him serving as a key SMART executive, who had signed a non-disclosure agreement.

**ANSWER:**

Double Check lacks knowledge or information sufficient to form a belief as

to the allegations set forth in Paragraph 31, and therefore denies them.  Answering

further, Double Check states that Plaintiff instructed Marsha to download its files

onto external storage devices during the normal course of his employment.

**COMPLAINT ¶32:**

Specifically, SMART's investigation revealed that Marsha has SMART's customer lists, referral source/channel partner information, prospective customer information, pricing data, strategic planning materials, proprietary training materials (which SMART sells to its customers), and similar highly confidential and trade secret information in his possession.  Marsha did not return any of this information to SMART following his voluntary resignation.  Accordingly, upon information and belief, Marsha still has this information in his possession.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 32.

**COMPLAINT ¶33:**

In particular, some of the documents Marsha retained include: SMART's "ATL Ops Audit Tracker," a detailed list of SMART's Atlanta-area customers

including services performed for these customers each month, operations planning, and contact information of key customer executives; SMART's customer portfolio for the Baton Rouge/Houston region; SMART's proprietary training materials, which it provides to customers for a fee; SMART's prospective client list; SMART's customer proposals and contracts, which contain details of SMART's confidential pricing model and service terms; SMART's Strategic Plan Starter, which contains the Company's 2018 strategic planning framework; and SMART's Budgeting and Revenue Forecast Tracker, which outlines SMART's plans for acquiring new business and contains.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 33.

**COMPLAINT ¶34:**

SMART takes all reasonable steps to ensure that its proprietary information is protected from disclosure. It does not share any of this information publicly, and it limits access to this information internally to only its highest-level employees, such as Marsha. All of SMART's computers are password-protected, and employees must have a username and password to access SMART's email and document management system.

**ANSWER:**

Double Check lacks knowledge or information sufficient to form a belief as

to the allegations set forth in Paragraph 34, and therefore denies them.

**COMPLAINT ¶35:**

SMART also discovered a draft services contract between Russell Landscaping, Inc. ("Russell Landscaping) and Double Check saved on Marsha's SMART computer. As written, the agreement provides that Double Check "shall provide services, training and advice relating to safety, risk and health" to Russell Landscaping. A true and correct copy of the agreement between Russell Landscaping and Double Check is attached as **Exhibit E.**

**ANSWER:**

Double Check admits that Marsha's SMART computer included a draft services contract between Russell Landscaping and Double Check. Double Check lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 35, and therefore denies them.

**COMPLAINT ¶36:**

Russell Landscaping is one of SMART's active sales prospects. SMART submitted several proposals to perform services to Russell Landscaping during Marsha's SMART employment, with Marsha's knowledge and active participation.

**ANSWER:**

Double Check denies that Russell Landscaping is one of SMART's active sales prospects. Double Check admits to the remaining allegations set forth in Paragraph 36.

**COMPLAINT ¶37:**

Upon information and belief, Marsha used SMART's proprietary information to appropriate this opportunity away from SMART on behalf of his new competing venture, Double Check.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 37.

**COMPLAINT ¶38:**

Upon information and belief, Marsha diverted and/or appropriated other sales prospects and opportunities away from SMART to Double Check while still employed with SMART.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 38.

**COMPLAINT ¶39:**

By way of example, upon information and belief, Marsha utilized the relationships he developed with SMART's referral sources/channel partners (including representatives of Yates Insurance Agency ("Yates")), using these contacts to identify and attract new business opportunities that would have otherwise gone to SMART.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 39.

**COMPLAINT ¶40:**

Further, on information and belief, Marsha used SMART's proprietary and trade secret information to secure referrals from referral sources/channel partners such as Yates.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 40.

**COMPLAINT ¶41:**

Marsha utilized his relationship with Yates representatives -- which he developed through his SMART employment -- to secure funding for Double Check and/or the services of Double Check's registered agent.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 41.

**COMPLAINT ¶42:**

Since his departure from SMART, Marsha, on behalf of Double Check, has solicited at least one of SMART's current customers, Manufacturing Resources,

45200232v.1

Inc. ("MRI"), to provide services competitive with SMART.  Upon information and belief, Marsha and Double Check used SMART's proprietary information and trade secrets to aid in this solicitation.

**ANSWER:**

Double Check admits that since Marsha's departure from SMART, he has

solicited at least one of SMART's current customers.  Double Check denies the

remaining allegations set forth in Paragraph 42.

**COMPLAINT ¶43:**

Marsha also used his position with SMART to recruit SMART's employees and independent contractors to leave SMART and work for Double Check.  In addition to his solicitation of Chapman and Low, Marsha also solicited and successfully recruited one of SMART's independent contractors, Marcial Marquez.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 43.

**COMPLAINT ¶44:**

In the course of its review of Marsha's computer, SMART's third-party forensics vendor also discovered an unexecuted independent contractor agreement between Marquez and Double Check dated December 20, 2017, prior to Marsha's departure from the Company.  A true and correct copy of this employment contract is attached as **Exhibit F**.

**ANSWER:**

Double Check admits to the allegations set forth in Paragraph 44.

**COMPLAINT ¶45:**

Marquez was an independent contractor with SMART who had recently completed a project for SMART in late November 2017.  Following the conclusion of that assignment, Turner met with Marquez in December 2017 to discuss future

opportunities for employment with SMART, and had him meet one of SMART's clients to discuss specific opportunities with it.  Upon information and belief, Marquez decided not to continue his relationship with SMART because Marsha solicited him to work for Double Check.

**ANSWER:**

Double Check lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 45, and therefore denies them.

**COMPLAINT ¶46:**

On February 5, 2018, SMART's counsel sent a letter to Defendants, notifying them that SMART was aware that they were unlawfully competing with it and were initiating an investigation into Marsha's departure from the Company. Further, SMART's counsel demanded that Marsha return any and all SMART property in his possession immediately.  A true and correct copy of this correspondence is attached as **Exhibit G**.  Neither Defendant responded.

**ANSWER:**

Double Check admits that Exhibit G is a copy of February 5, 2018 letter, which speaks for itself.

**COMPLAINT ¶47:**

Thereafter, on February 13, 2018, SMART's counsel sent a second letter to Defendants, notifying them that SMART had evidence that Marsha had its confidential and trade secret information in his possession.  Again, SMART demanded that Defendants return this information immediately.  A true and correct copy of this letter is attached as **Exhibit H**.  Again, Defendants failed to respond.

**ANSWER:**

Double Check admits that Exhibit H is a copy of February 5, 2018 letter, which speaks for itself.

**COMPLAINT ¶48:**

As a result of Defendants' unlawful actions, SMART has been damaged, including but not limited to by the loss of prospective customers such as Russell Landscaping, the loss of Marquez, and the loss and utilization of its proprietary information and trade secrets.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 48.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT AGAINST DEFENDANT MARSHA
*Breach of the Confidentiality and Non-Solicitation Provisions*

**COMPLAINT ¶49:**

SMART incorporates by reference and re-alleges the allegations contained in all preceding Paragraphs as if fully set forth herein.

**ANSWER:**

Double Check re-alleges its answers to Paragraphs 1 through 48, as if fully

set forth this point and incorporates them herein by reference.

**COMPLAINT ¶50:**

Defendant Marsha executed valid agreements with Plaintiff in exchange for valuable consideration, through which he agreed to refrain from using any of SMART's confidential information for any purpose except to perform services for SMART, and to not directly or indirectly solicit, recruit or induce any SMART employee to leave employment with SMART.

45200232v.1

**ANSWER:**

The allegations in this paragraph are not directed to Double Check and requires no response from Double Check. To the extent a response is required, Double Check lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 50, and therefore denies them.

**COMPLAINT ¶51:**

Notwithstanding his contractual obligations to the contrary, Defendant Marsha has materially breached his Employment and Non-Disclosure/Non-Solicitation Agreements by disclosing and using SMART's trade secret and/or confidential and proprietary information to and for the benefit of himself and Double Check.  Marsha's breach of the Employment and Non-Disclosure/Non-Solicitation Agreements is further evidenced by his failure to return SMART's information at the end of his employment with SMART.

**ANSWER:**

Double Check denies that Marsha disclosed or used SMART's trade secret and/or confidential and proprietary information to and for the benefit of Double Check.  As to the remaining allegation, Double Check lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 51, and therefore denies them.

**COMPLAINT ¶52:**

Defendant Marsha has also materially breached his Employment and Non-Disclosure/Non-Solicitation Agreements by directly soliciting, or participating in the solicitation of, SMART employees to leave SMART and come to work for competitor Double Check, including Ted Low, SMART's Vice President of

National Operations and Brandon Chapman, SMART's Vice President of Gulf Coast Region.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 52.

**COMPLAINT ¶53:**

As a direct and proximate result of Defendant Marsha's breach of his Employment and Non-Disclosure/Non-Solicitation Agreements, SMART has suffered, and will continue to suffer, immediate and irreparable injury, for which SMART has no adequate remedy at law, and for which SMART is entitled to preliminary and permanent injunctive relief.

**ANSWER:**

The allegations in this paragraph are not directed to Double Check and

requires no response from Double Check. To the extent a response is required,

Double Check lacks knowledge or information sufficient to form a belief as to the

allegations set forth in Paragraph 53, and therefore denies them.

**COMPLAINT ¶54:**

As a direct and proximate result of Defendant Marsha's breach of his Employment and Non-Disclosure/Non-Solicitation Agreements, SMART has suffered actual damages, including the loss of at least one sales opportunity and the loss of one of its independent contractors.

**ANSWER:**

The allegations in this paragraph are not directed to Double Check and

requires no response from Double Check. To the extent a response is required,

-21-

Double Check lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 54, and therefore denies them.

**COMPLAINT ¶55:**

SMART is also entitled to attorney's fees and costs of litigation pursuant to the terms of the Non-Disclosure/Non-Solicitation Agreement.

**ANSWER:**

The allegations in this paragraph are not directed to Double Check and requires no response from Double Check. To the extent a response is required, Double Check lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 55, and therefore denies them.

## COUNT II
## BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT MARSHA

**COMPLAINT ¶56:**

SMART incorporates by reference and re-alleges the allegations contained in all preceding Paragraphs as if fully set forth herein.

**ANSWER:**

Double Check re-alleges its answers to Paragraphs 1 through 55, as if fully set forth this point and incorporates them herein by reference.

**COMPLAINT ¶57:**

As a SMART executive officer who was entrusted with SMART's confidential and proprietary information, who had the authority to offer pricing and other contract terms to current and prospective clients, and to amend proposals with customers and other third parties, Marsha was an agent of SMART and owed it a fiduciary duty of loyalty.

45200232v.1

Marsha breached his fiduciary duties to SMART by:

(a)     disclosing SMART's confidential and proprietary information and trade secrets to Double Check without the Company's consent, both before and after the termination of his SMART employment;

(b)     misappropriating SMART's confidential and proprietary information and trade secrets to benefit himself and Double Check, a direct competitor of SMART, both before and after the termination of his SMART employment;

(c)     soliciting SMART employees and/or contractors, including but not limited to, Brandon Chapman, Ted Low, and Marcial Marquez, to leave SMART and work for a competitor; and

(d)     appropriating SMART's corporate opportunities for his own benefit and the benefit of Double Check, including but not limited to SMART's prospective client Russell Landscaping and referrals from one of SMART's most important referral sources, Yates.

## ANSWER:

Double Check denies receiving or using any of SMART's confidential or proprietary information.  The allegations in this paragraph are not directed to Double Check and requires no response from Double Check.  To the extent a response is required, Double Check lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 57, and therefore denies them.

## COMPLAINT ¶59:

Marsha breached his fiduciary duty to SMART in bad faith, such that SMART is entitled to an award of attorney's fees pursuant to O.C.G.A. § 13-6-11.

45200232v.1

**ANSWER:**

The allegations in this paragraph are not directed to Double Check and requires no response from Double Check. To the extent a response is required, Double Check lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 59, and therefore denies them.

**COMPLAINT ¶60:**

As a result of the foregoing breaches of Marsha's fiduciary duty, SMART has been damaged in an amount to be proven at trial, and it additionally has suffered and will continue to suffer irreparable harm that is not compensable by money damages and may only be remedied by injunctive relief.

**ANSWER:**

The allegations in this paragraph are not directed to Double Check and requires no response from Double Check. To the extent a response is required, Double Check lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 60, and therefore denies them.

**COUNT III**
**MISAPPROPRIATION OF TRADE SECRETS AGAINST ALL DEFENDANTS**

**COMPLAINT ¶61:**

SMART incorporates by reference and re-alleges the allegations contained in all preceding Paragraphs as if fully set forth herein.

45200232v.1

**ANSWER:**

Double Check re-alleges its answers to Paragraphs 1 through 60, as if fully set forth this point and incorporates them herein by reference.

**COMPLAINT ¶62:**

The customer lists, referral source/channel partner information, sales prospect data, pricing data, marketing materials, strategic plans, and training materials which SMART sells to customers and other documents described above constitute "trade secrets" within the meaning of O.C.G.A. § 10-1-761. They are not commonly known by or available to the public; derive economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use; and are the subject of efforts by SMART that are reasonable under the circumstances to maintain their secrecy.

**ANSWER:**

Double Check lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 62, and therefore denies them.

**COMPLAINT ¶63:**

Defendant Marsha disclosed and/or used the trade secrets described above without express or implied consent, and used improper means to acquire knowledge of such trade secrets because he acquired such knowledge by breaching his confidential fiduciary relationships with SMART and his contractual obligation to maintain their secrecy and/or limit their use.

**ANSWER:**

Double Check denies receiving or using any of SMART's trade secrets. The remaining allegations in this paragraph are not directed to Double Check and requires no response from Double Check. To the extent a response is required,

-25-

Double Check lacks knowledge or information sufficient to form a belief as to the

remaining allegations set forth in Paragraph 63, and therefore denies them.

**COMPLAINT ¶64:**

    Upon information and belief, Double Check acquired the trade secrets described above from Defendant Marsha and knew or had reason to know that Defendant Marsha acquired such trade secrets by improper means.

**ANSWER:**

    Double Check denies the allegations set forth in Paragraph 64.

**COMPLAINT ¶65:**

    Upon information and belief, Double Check used the trade secrets described above without express or implied consent, and it used improper means to acquire knowledge of such trade secrets because it acquired such knowledge by inducing breaches of confidential fiduciary relationships and duties to maintain secrecy and/or limit use.

**ANSWER:**

    Double Check denies the allegations set forth in Paragraph 65.

**COMPLAINT ¶66:**

    Upon information and belief, Double Check used the trade secrets described above without express or implied consent, and at the time of use, it knew or had reason to know that knowledge of such trade secrets was: derived from John Marsha, who had utilized improper means to acquire it; acquired by John Marsha under circumstances giving rise to duties to maintain secrecy and/or limit use; and derived from John Marsha, who owed SMART duties to maintain secrecy and/or limit use.

**ANSWER:**

    Double Check denies the allegations set forth in Paragraph 66.

**COMPLAINT ¶67:**

As a result of Defendants' misappropriation of its trade secrets, SMART has been damaged in an amount to be proven at trial, and it additionally has suffered and will continue to suffer irreparable harm that is not compensable by money damages and may only be remedied by injunctive relief.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 67.

**COMPLAINT ¶68:**

Further, Defendants' misappropriation of SMART's trade secrets was willful and malicious, and SMART should be awarded exemplary damages and attorneys' fees under O.C.G.A. §§ 10-1-763 and 764.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 68.

## COUNT IV
## CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

**COMPLAINT ¶69:**

SMART incorporates by reference and re-alleges the allegations contained in all preceding Paragraphs as if fully set forth herein.

**ANSWER:**

Double Check re-alleges its answers to Paragraphs 1 through 68, as if fully

set forth this point and incorporates them herein by reference.

**COMPLAINT ¶70:**

Defendants have acted in concert to undertake the tortious conduct and other wrongs alleged herein, specifically Marsha's breach of fiduciary duty.

45200232v.1

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 70.

**COMPLAINT ¶71:**

At a minimum, its conspiracy is inferable from the profits they have shared and the concerted nature of their activities, e.g., the distribution of information/items taken from SMART.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 71.

**COMPLAINT ¶72:**

Defendants' civil conspiracy is continuous and ongoing.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 72.

**COMPLAINT ¶73:**

Under the conspiracy, all tortious conduct and other wrongs by any one conspirator shall be chargeable to all Defendants.

**ANSWER:**

The allegations set forth in Paragraph 73 are legal conclusions, to which no response is required.  To the extent that a response is required, Double Check denies the allegations.

45200232v.1

## COUNT V
## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030(A)(2)(C) AGAINST DEFENDANT MARSHA

**COMPLAINT ¶74:**

SMART incorporates by reference and re-alleges the allegations contained in all preceding Paragraphs as if fully set forth herein.

**ANSWER:**

Double Check re-alleges its answers to Paragraphs 1 through 73, as if fully set forth this point and incorporates them herein by reference.

**COMPLAINT ¶75:**

As a SMART officer, Defendant Marsha had access to SMART's computer network and hardware.

**ANSWER:**

Double Check admits that Marsha had access to certain computer networks and hardware belonging to SMART, but denies Marsha had full access to all of SMART's computer networks and hardware.

**COMPLAINT ¶76:**

Defendant Marsha intentionally accessed SMART's protected network and computer without authorization or in such a way that exceeded his authorization by misappropriating SMART's confidential and proprietary information to benefit himself and Double Check, a direct competitor of SMART.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 76.

-29-

**COMPLAINT ¶77:**

Defendant Marsha's unauthorized access of SMART's protected computer and network resulted in a loss to SMART of at least or exceeding $5,000 in value. SMART was required to expend time, resources and money investigating the cause and scope of Marsha's computer intrusion and breaches of confidentiality, and has lost an amount to be determined at trial from Marsha's unlawful use of its confidential information he misappropriated by virtue of his unauthorized access.

**ANSWER:**

The allegations in this paragraph are not directed to Double Check and

requires no response from Double Check. To the extent a response is required,

Double Check lacks knowledge or information sufficient to form a belief as to the

allegations set forth in Paragraph 77, and therefore denies them.

**COUNT VI**
**UNJUST ENRICHMENT AGAINST ALL DEFENDANTS**

**COMPLAINT ¶78:**

Defendants Marsha and Double Check have been unjustly enriched by virtue of their misappropriation of SMART's confidential information and trade secrets, to the detriment of SMART.

**ANSWER:**

Double Check re-alleges its answers to Paragraphs 1 through 77, as if fully

set forth this point and incorporates them herein by reference.

**COMPLAINT ¶79:**

Additionally, to the extent SMART reimbursed Marsha for business-related expenses, or compensated him for time he spent engaging in competitive activities on behalf of himself or Double Check, Marsha has been unjustly enriched to the detriment of SMART.

45200232v.1

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 79.

**COMPLAINT ¶80:**

As Defendants have obtained benefits for which should be returned to SMART and/or for which SMART should be compensated under rules of equity, a claim for unjust enrichment is warranted and SMART should be made whole for its losses resulting in a benefit and/or windfall to Defendants.

**ANSWER:**

Double Check denies the allegations set forth in Paragraph 80.

\* \* \*

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff has failed to state a claim against Double Check upon which relief may be granted.

### SECOND DEFENSE

This Court lacks subject matter jurisdiction over Plaintiff's claims.

### THIRD DEFENSE

Plaintiff has suffered no damage as the result of any action or inaction on the part of Double Check.

45200232v.1

## FOURTH DEFENSE

Double Check did not combine or confederate with Marsha for the purposes of doing anything unlawful, oppressive or immoral.

## FIFTH DEFENSE

Double Check has acted in good faith at all times.

## SIXTH DEFENSE

Double Check does not possess any property belonging to Plaintiff.

## SEVENTH DEFENSE

Any "trouble and expense" experienced by Plaintiff is the result of its own conduct.

## EIGHTH DEFENSE

Double Check has not engaged in willful misconduct, wantonness, oppression or acted with want of care.

\* \* \*

WHEREFORE, having fully answered the allegations set forth in the First Amended Verified Complaint and having asserted its defenses thereto, Double Check respectfully prays that:

1. This action be dismissed with prejudice;

2. Plaintiff take nothing and be granted no relief herein;

3.     Double Check be awarded its attorneys' fees and the expenses

incurred in the defense of this litigation; and

4.     The Court grant such additional and further relief as is just and

equitable.

This 22nd day of March, 2018.

SEYFARTH SHAW LLP

By:  /s/ Eric F. Barton_____
Eric F. Barton
Georgia Bar No. 040704
ebarton@seyfarth.com

1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile:  (404) 892-7056

*Attorneys for Double Check Risk
Solutions, LLC*

45200232v.1

## **VERIFICATION**

I verify under penalty of perjury that the specific facts set forth in the foregoing Verified Answer are true and correct.

Executed on March _____22_____, 2018.


_____

Ben Newton

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**SMART PROFITABILITY SOLUTIONS, LLC d/b/a SMART SAFETY GULF COAST,**

          **Plaintiff,**

  v.

**DOUBLE CHECK RISK SOLUTIONS, LLC AND JOHN MARSHA, II,**

          **Defendants.**

**Civil Action**
**File No. 1:18-cv-00706-MHC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DOUBLE CHECK RISK SOLUTIONS, LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF has been filed with the Clerk of Court using the CM/ECF system and will send notification to all counsel of record.

This 22nd day of March, 2018.

45200232v.1

SEYFARTH SHAW LLP

By:    /s/ Eric F. Barton_____
       Eric F. Barton
       Georgia Bar No. 040704
       ebarton@seyfarth.com

       *Counsel for Defendant Double Check*
       *Risk Solutions, LLC*