IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SMART PROFITABILITY SOLUTIONS, LLC d/b/a SMART SAFETY GULF COAST,<br><br>Plaintiff,<br><br>v.<br><br>DOUBLE CHECK RISK SOLUTIONS, LLC AND JOHN MARSHA, II,<br><br>Defendants. | Civil Action<br>File No. 1:18-cv-00706-MHC |

**DOUBLE CHECK RISK SOLUTIONS, LLC'S
<u>RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND</u>**

The Court should deny Plaintiff SMART Profitability Solutions, LLC's motion for leave to amend to the extent that it seeks to assert a tortious interference claim against Defendant Double Check Risk Solutions, LLC because the claim is deficient as a matter of law.

**I.     BRIEF FACTUAL SUMMARY**

It is undisputed that SMART originally hired John Marsha as an independent contractor. (Am. Compl. ¶ 9, ECF No. 21). To become an independent contractor, SMART required that Marsha execute a confidentiality, non-solicitation, and non-competition agreement, which he did on or about May 30, 2014 (the "Independent

Contractor Agreement"). (*Id.* ¶ 10, Ex. A). The Independent Contractor Agreement includes certain restrictive covenants regarding Marsha's right to compete against SMART and to solicit SMART's customers and employees during the "prohibited term," defined as during his employment and "for the two-year period following the termination of Marsha's employment with SMART (regardless of the reason for such termination)." (*Id.*, Ex. A at 2).

It is further undisputed that, on September 4, 2014, SMART terminated Marsha's independent contractor relationship with the company and offered him full time employment as a Business Development Officer (the "Employment Agreement"). (*Id.* ¶ 15, Ex. B). The first page of the Employment Agreement specifically states that the letter "memorializes the terms of your employment" and then proceeds to specify each of those terms. (*Id.* Ex. B at 1). The Employment Agreement also includes a merger clause, which explicitly states that "[t]his letter and any attachments contain ***all the terms*** of your employment and ***supersede any prior understandings or agreements***, whether oral or written." (*Id.* Ex. B at 5 (emphasis added)). The Employment Agreement further indicates that it includes a "Confidentiality Agreement," but no such "Confidentiality Agreement" was attached to either the Employment Agreement or SMART's complaint. Marsha

executed the Employment Agreement on September 5, 2014 at which point he was no longer an independent contractor, but a full time employee. (*Id*.).

More than two years later, SMART filed this suit against Double Check and Marsha, claiming that Marsha breached the 2014 restrictive covenant agreement that Marsha executed when he became an independent contractor. SMART now seeks to amend its complaint to assert a tortious interference claim against Double Check. As detailed below, there is no lawful basis to do so.

## II.   STANDARD OF REVIEW

The Court should freely give parties leave to amend. Fed. R. Civ. P. 15(a)(2). The Court should not, however, provide leave to amend when the request is futile. A proposed amendment may be denied for futility "when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (citation omitted).

## III.   ARGUMENT

Double Check would be entitled to judgment on SMART's claim for tortious interference (Count VI) based solely on the allegations in the proposed second amended complaint because Marsha's Independent Contractor Agreement is expired and unenforceable. The restrictions began to run on September 5, 2014, the date that Marsha's independent contractor relationship with SMART ended. Further, any

restrictions imposed by this agreement were eliminated when Marsha executed the subsequent Employment Agreement, which contains a merger clause. The Court should, therefore, deny SMART's proposed amendment to the extent it seeks to add a claim for tortious interference against Double Check.

### A. SMART's tortious interference claim fails because it cannot identify an enforceable agreement

SMART's tortious interference claim against Double Check fails because it cannot identify an enforceable contract, a necessary element to a tortious interference claim. *See, e.g.*, *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 608 (1998) ("In order to prevail on a claim alleging tortious interference with contract, a plaintiff must establish the existence of a valid contract and that the defendant acted intentionally, without privilege or legal justification, to induce another not to enter into or continue a business relationship with the plaintiff, thereby causing the plaintiff financial injury.") (citations omitted).

The relied-upon agreement is deficient for two reasons. First, the Independent Contractor Agreement's restrictive covenants began to run when SMART terminated Marsha's independent contractor relationship with SMART and hired him as an employee. Second, the agreement was entirely superseded by the Employment Agreement. Because the Employment Agreement contains a merger

clause, the parties effectively agreed to extinguish any obligations arising out of the agreement.

### 1. The Independent Contractor Agreement's non-solicitation obligations have expired

The Independent Contractor Agreement's non-solicitation restrictions have long since ended. The agreement provides that Marsha may not solicit SMART employees and customers during his employment or for the two years immediately following the termination of his employment with SMART. (Compl. Ex. A at 2). His relationship as an *independent contractor* with SMART ended on September 4, 2014. (*Id.* ¶ 15). Therefore, the "Prohibit Term" began when Marsha's independent contractor relationship with SMART ended and expired on September 5, 2016.

### 2. The Independent Contractor Agreement was superseded when SMART and Marsha executed a subsequent Employment Agreement with a merger clause

The Independent Contractor Agreement has also been superseded by the merger clause in Marsha's Employment Agreement, which he executed on September 5, 2014. (First Am. Compl. ¶ 15, Ex. B). The Employment Agreement expressly states that it contains "all terms of [Marsha's] employment and supersede any prior understandings or agreements, whether oral or written." (*Id.* Ex. B at 5).

*MAPEI Corporation v. Prosser*, 328 Ga. App. 81 (2014), is controlling in this situation and completely indistinguishable.[1] There, a company sued its former employee, a chemist, based on alleged violations of his non-compete. *Id.* at 82. The company had a problem, though; the chemist executed an agreement that contained a non-compete on June 7, 2011, but he subsequently executed a similar agreement that did ***not*** contain the non-compete. *Id.* The company sued, and the chemist moved to invalidate the non-compete based on the merger clause in the second agreement.[2] *Id.* at 83. The chemist argued that the merger clause meant what it said and, by declaration that it "totally replaces all prior contractual agreements or understandings" between the parties, it eliminated his earlier non-compete obligations. *Id.*

The trial court agreed, and the Georgia Court of Appeals affirmed. *Id.* at 86-87. The court of appeals quickly and easily found that the "later-entered agreement replaces in their entirety all earlier entered agreements that concern a similar subject matter" and enforced the clear consequence of the integration clause.

---

[1] Georgia law governs this contract concerning work to be performed in Georgia between a company with its principal place of business in Georgia and a resident of Georgia. (*See* First Am. Compl. ¶¶ 1, 3, Ex. B at 4.)

[2] These clauses are also commonly referred to as a superseding-agreement clause, an integration clause, or an entire-agreement clause.

This case demands the same outcome. Marsha's Employment Agreement contains an unequivocal integration clause dictating that it supersedes any prior understandings or agreements. (Am. Compl. Ex. B at 6). The Independent Contractor Agreement is a prior written agreement concerning the same subject matter, so any obligations under the agreement were discharged upon execution of the Employment Agreement. *See MAPEI Corp.* 328 Ga. App. at 84-85; *see also Atlanta Integrity Mortg., Inc. v. Ben Hill United Methodist Church, Inc.*, 286 Ga. App. 795, 797 (2007) ("Under the merger rule, an existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract.") (citation omitted).

## IV.   CONCLUSION

SMART's motion for leave to file a second amended complaint should be denied, in part, because the allegations in the first amended complaint and proposed second amendment complaint conclusively establish that the proposed tortious interference claim (Count VI) is irreparably deficient.[3] The Court should therefore deny in part SMART's request to file its second amended complaint.

---

[3] Double Check also notes that SMART's claims against Double Check and Marsha for civil conspiracy (Count IV) and unjust enrichment (Count VII) are defective to the extent they are preempted by the Georgia Trade Secrets Act. *See* O.C.G.A. § 10-

This 2nd day of May, 2018.

        SEYFARTH SHAW LLP

        By: ___*Eric F. Barton*_____
            Eric F. Barton
            Georgia Bar No. 040704
            ebarton@seyfarth.com

            1075 Peachtree Street, N.E., Suite 2500
            Atlanta, Georgia 30309-3962
            Telephone: (404) 885-1500
            Facsimile: (404) 892-7056

            *Attorneys for Double Check Risk Solutions, LLC*

---

1-767(a). SMART alleges that Double Check and Marsha conspired to have him breach his fiduciary duty by disclosing confidential information and trade secrets and that Double Check was unjustly enriched "by [its] misappropriation of SMART's confidential information and trade secrets." (Second Am. Compl. ¶¶ 86, 121). These claims are based in whole or in part on the same allegations as the Georgia Trade Secrets Act claim and are therefore preempted. *See, e.g.*, *Meyn Am., LLC v. Tarheel Distributors, Inc.*, 36 F. Supp. 3d 1395, 1408 (M.D. Ga. 2014); *Putters v. Rmax Operating, LLC*, No. 1:13-CV-3382-TWT, 2014 WL 1466902, at *2 (N.D. Ga. Apr. 15, 2014).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **SMART PROFITABILITY SOLUTIONS, LLC d/b/a SMART SAFETY GULF COAST,**<br><br>**Plaintiff,**<br>v.<br><br>**DOUBLE CHECK RISK SOLUTIONS, LLC AND JOHN MARSHA, II,**<br><br>**Defendants.** | Civil Action<br>File No. 1:18-cv-00706-MHC |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DOUBLE CHECK RISK SOLUTIONS, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND has been filed with the Clerk of Court using the CM/ECF system and will send notification to all counsel of record.

This 2nd day of May, 2018.

                                                SEYFARTH SHAW LLP

                                                By:  _Eric F. Barton_____
                                                       Eric F. Barton
                                                       *Counsel for Defendant Double Check Risk Solutions, LLC*