IN THE U.S. DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SMART PROFITABILITY ) <br> SOLUTIONS. LLC d/b/a SMART ) <br> SAFETY GULF ) <br> COAST, ) <br>  ) <br>     Plaintiff, ) <br>  ) <br> vs. ) <br>  ) <br> DOUBLE CHECK RISK ) <br> SOLUTIONS, LLC AND ) <br> JOHN MARSHA, II, ) <br>     Defendants. ) | Civil Action No. 1:18-cv-00706-MHC <br><br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE ITS SECOND AMENDED VERIFIED COMPLAINT**

One of the amendments Plaintiff Smart Profitability Solutions, LLC d/b/a SMART Safety Gulf Coast ("SMART") seeks to make is to add a claim for tortious interference with contract against Defendant Double Check Risk Solutions, LLC ("Double Check"). Double Check objects to this amendment on the ground that the contract on which Plaintiff bases this claim is "expired and unenforceable." As Double Check's contention is incorrect, Plaintiff's tortious interference claim against it is viable, and the Court should grant Plaintiff's Motion in its entirety.

1

## I.     THE AGREEMENT AT ISSUE.

Plaintiff's tortious interference claim against Double Check is premised on Double Check's interference with the confidentiality and employee non-solicitation provisions of an agreement between Plaintiff and its former employee, Defendant John Marsha, II ("Marsha") -- the Confidentiality, Non-Solicitation and Non-Competition Agreement (the "NDA").  *See* Ex. A to Plaintiff's First Amended Complaint ("FAC"). Marsha first executed this Agreement in conjunction with the commencement of his relationship with SMART on or about May 30, 2014. (FAC, ¶ 10). At that time, SMART engaged Marsha as an independent contractor. (FAC, ¶ 9).

While Double Check refers to the Non-Disclosure/Non-Solicitation Agreement as the "Independent Contractor Agreement," this is a mischaracterization. The agreement is titled "Confidentiality, Non-Solicitation, and Non-Competition Agreement," and only contains covenants relating to the protection of Plaintiff's information, client and employee relationships, and other competitive business interests.  (*See generally* Ex. A to FAC).   It is devoid of provisions outlining or governing the scope or manner of Marsha's work as an independent contractor. (*Id*.). This is not surprising, as at the time Marsha executed the NDA, he also executed a separate letter agreement which outlined the terms of

his independent contractor relationship with SMART. (*See* May 30, 2014 Marsha Independent Contractor Agreement, attached as **Ex. 1)**. This agreement includes an express provision requiring Marsha to sign the NDA (referred to therein as "Smart's standard confidentiality and non-compete agreement") as a term of his engagement. (*Id*. at p. 3).

Several months later, on September 4, 2014, SMART hired Marsha as its Business Development Officer. (FAC, ¶ 15). Upon accepting SMART's offer of employment, Marsha signed an offer letter acknowledging and agreeing to the terms of his employment (the "Employment Agreement"). (FAC, ¶ 15 and its Ex. B). The Employment Agreement contains a section titled "Employment Conditions," which includes the following statement: "Subject to Smart's Standard Confidentiality, Non-Solicitation, and Non-Compete Agreement."  (FAC, Ex. B at p. 5). Accordingly, the Employment Agreement expressly incorporated the terms of the NDA.

As outlined in the Second Amended Verified Complaint ("SAC"), Plaintiff alleges that Marsha violated the terms of the NDA in several respects, including by soliciting its employees to leave SMART and by appropriating its confidential and/or trade secret information. (SAC, Count I).  In turn, Plaintiff alleges that Defendant Double Check (and the other individual Defendants Plaintiff seeks to

add to this action), tortiously interfered with its contract with Marsha by encouraging and aiding in his breach. (SAC, Count VI).

## II. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM IS VIABLE.

Double Check's opposition to Plaintiff's tortious interference claim is based on two alternative arguments: (1) that the non-solicitation covenants contained within the NDA expired in September 2016, two years after the termination of Marsha's engagement as an independent contractor with SMART, and thus were not in effect at the time he breached them;[1] or (2) that the NDA was superseded by, rather than incorporated into, Marsha's Employment Agreement.  Neither argument withstands scrutiny.

### A. The Express Language of the NDA Contradicts Double Check's Expiration Argument.

The employee non-solicitation covenant contained in the NDA apply during Marsha's employment and for two years thereafter.  Double Check asserts that because Marsha's independent contractor relationship with SMART ended on September 4, 2014, the non-solicitation covenant expired on or about September 4, 2016.  However, the express language of the agreement prohibits Marsha from soliciting its employees "during the Prohibited Term," which is defined as "*during*

---

[1] Note that this argument is inapplicable to the non-disclosure provision of the NDA, as that provision contains no time limitation. (FAC, Ex. A at ¶ A).

4

*employment*, and the two-year period *immediately following the termination of my employment* with Smart (regardless of the reason for such termination)." (FAC, Ex. A, ¶ C(2)) (emphasis added). Nowhere in the agreement is "employment" limited to or defined as Marsha's engagement as an independent contractor. It is undisputed that Marsha's relationship with SMART did not terminate in September 2014 -- it merely changed from contractor to employee. As Marsha's relationship with SMART did not terminate until his resignation on January 2, 2018, the non-solicitation covenant contained within the NDA did not begin to run until that date, and remains in effect today. (FAC, ¶ 25).

> **B.  Marsha's Employment Agreement Incorporated the Terms of the NDA.**

Double Check next argues that the existence of a merger clause within the Employment Agreement means that it superseded and entirely replaced the terms of the NDA.[2] This argument fails on several grounds.

First, the merger rule provides that "an existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and *inconsistent* agreement *completely covering the subject matter* embraced by the original

---

[2] The merger clause provides: "This letter and any attachments contain all of the terms of your employment and supersede any prior understandings or agreements, whether oral or written." (FAC, Ex. B, p. 5).

5

contract." *Atl. Integrity Mortg., Inc. v. Ben Hill United Methodist Church*, 286 Ga. App. 795, 797 (2007) (emphasis added). The case relied upon by Double Check illustrates this point. There, the court ruled that one restrictive covenant agreement superseded another where "large parts" of the agreements were "identical" to each other, including the title and subject matter (the employer's confidential information). *See MAPEI Corp. v. Prosser*, 328 Ga. App. 81, 83-84, (2014). Further, the two agreements were inconsistent, as one contained a non-compete provision and the other did not. *Id*. at 82.

In contrast, here the Employment Agreement and NDA do not cover the same subject matter and are not inconsistent with each other. While the Employment Agreement's merger clause logically superseded Marsha's Independent Contractor Agreement -- as the two documents governed the working relationship between Marsha and SMART in contradictory contexts -- the same is not true of the NDA. Accordingly, the existence of the merger clause does not affect the continued validity of Marsha's NDA. *Atl. Integrity*, 286 Ga. App. at 797 ("In order for the merger rule to apply .. .the parties of the merging contracts must be the same and the terms of those contracts must completely cover the same subject matter and be inconsistent.").

Further, Double Check completely ignores the fact that Marsha's Employment Agreement expressly *incorporates* the terms of the NDA. (*See* FAC, Ex. B at p. 5) (providing that Marsha's employment was "subject to Smart's Standard Confidentiality, Non-Solicitation and Non-Compete Agreement").  It is well-accepted that a written agreement "may also incorporate by reference … other documents by specific reference and identification so that such documents are treated as if a part of the document making the reference." *Bowman v. Walnut Mtn. Prop. Owners Ass'n, Inc*., 251 GA. App. 91, 95 (2001).  "As a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where the provisions to which reference is made have a reasonably clear and ascertainable meaning.") (quoting *Goldman v. Vinson*, 244 Ga. App. 815, 817 (2000)).

A merger clause only operates to supersede prior agreements that are not contained within the later, merged agreement.  As the NDA is incorporated into the Employment Agreement, the merger clause does not operate to supersede its terms. *Forest Commodity Corp. v. Lone Star Indus., Inc*., 255 Ga. App. 244, 248 (2002) ("The purpose of merger clauses is to preclude any unilateral modifications of a written contract through evidence of pre-existing terms *which were not incorporated into the written contract*.") (emphasis added); *Worsham v. Provident*

7

*Cos., Inc.*, 249 F. Supp. 2d 1325, 1332-33 (N.D. Ga. 2002) (merger clause will not bar consideration of misrepresentations underlying fraud claim where they were incorporated into the agreement itself) (Story, J.).

Accordingly, the terms of the NDA survived Marsha's execution of the Employment Agreement. SMART's tortious interference claim based on the NDA therefore survives as well.

### III. PLAINTIFF'S CIVIL CONSPIRACY AND UNJUST ENRICHMENT CLAIMS ARE NOT PREEMPTED.

In a passing footnote, Double Check challenges SMART's claims against it for civil conspiracy (related to Marsha's breach of fiduciary duty) and unjust enrichment on the ground that they are preempted by the Georgia Trade Secrets Act ("GTSA"). However, the factual allegations underlying these claims extend beyond those pertaining to trade secrets, and thus they are not preempted. *See* SAC, ¶ 86 (outlining the allegations underlying SMART's breach of fiduciary duty claim, including solicitation of employees, customers, and other competitive activity unrelated to use of Plaintiff's trade secrets); SAC, ¶ 121 (alleging Double Check and Marsha have been unjustly enriched by their misappropriation of not only Plaintiff's trade secrets, but also its confidential information). *See Professional Energy Mgmt., Inc. v. Necaise,* 300 Ga. App. 223, 227 (2009) (to the

extent claims are not based on misuse of trade secrets, they are not preempted by the GTSA); *Candy Craft Creations, LLC v. Gartner*, No. CV 212–091, 2015 WL 1541507, at * 15-16 (S.D. Ga. Mar. 31, 2015) ("Clearly, each of these claims is based on allegations separate and distinct from the allegations of trade secret misappropriation claims and therefore is not preempted by the GTSA.").

## IV.   CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that the Court grant its Motion, and allow Plaintiff to amend its Complaint as requested.

Respectfully submitted this 9th day of May, 2018.

>
> s/ Kathryn Hinton
> Kathryn Hinton
> GA Bar No. 542930
> David E. Gevertz
> GA Bar No. 292430
> BAKER, DONELSON, BEARMAN,
> CALDWELL & BERKOWITZ, PC
> 3414 Peachtree Rd. NE, Ste. 1600
> Atlanta, GA  30326
> Phone: 404-223-2216
> Email:   khinton@bakerdonelson.com
>                dgevertz@bakerdonelson.com
>
> *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on this date I caused to be served a true and correct copy of *Plaintiff's Reply in Support of Its Motion for Leave to File Its Second Amended Verified Complaint* to Defendants as follows:

### Via ECF Filing Notification:

Eric Barton, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street, NE, Suite 2500
Atlanta, GA 30309-3958

***Attorney for Defendant Double Check Risk Solutions, LLC***

### Via U.S. Mail

John C. Marsha, II
119 Foxdale Way
Dallas, GA 30132

Respectfully submitted this 9th day of May, 2018.

s/ Kathryn Hinton
Kathryn Hinton
GA Bar No. 542930
***Attorney for Plaintiff***

4839-0985-6613 v1
2904860-000002 05/09/2018